Lennon WILLIFORD,
Petitioner-Appellant,

v.

Warren YOUNG and Bronson LaFollette, Respondents-Appellees.

No. 85–1685.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1985.

Decided Dec. 18, 1985.

Michael Yovovich, Office of State Public Defender, Madison, Wis., for petitioner-appellant.

Thomas J. Balistreri, Dept. of Justice, Madison, Wis., for respondents-appellees.

Before BAUER, WOOD and ESCH-BACH, Circuit Judges.

BAUER, Circuit Judge.

Lennon Williford appeals the denial by the district court of his petition for writ of habeas corpus. Williford was convicted in the Circuit Court of Racine County, Wisconsin of murder in the first degree and sentenced to life imprisonment. Williford petitioned the United States District Court for the Eastern District of Wisconsin for a writ of habeas corpus. That court denied the petition. Williford argues that the district court had three grounds upon which to grant his petition but erroneously failed to do so. Specifically Williford argues (1) that the failure of the Wisconsin trial court to instruct the jury on the lesser included offense of manslaughter (killing in the heat-of-passion) denied Williford due process of law, (2) that his attorney's incompetence denied Williford his Sixth and Fourteenth Amendment right to the effective assistance of counsel, and (3) that the jury instruction given at trial on the defense of intoxication shifted the burden of persuasion on the issue of state of mind to Williford and thereby denied him due process. We reject Williford's arguments and affirm the district court's denial of the petition.

## I.

Williford contends that the Wisconsin trial court denied him due process of law by failing to instruct the jury on the lesser included offense of manslaughter (killing in the heat-of-passion). We disagree.

The test in these circumstances is clearly established.

> The failure to instruct on a lesser included offense, even if incorrect under state law, does not warrant setting aside a state conviction unless "failure to give the instruction could be said to have amounted to a fundamental miscarriage of justice."

*Nichols v. Gagnon*, 710 F.2d 1267, 1269 (7th Cir.1983) (citation omitted). Examination of the law and evidence reveals that Williford cannot satisfy this test.

Williford cites no case in which failure to instruct the jury as to a lesser included offense in similar circumstances was found to be a denial of due process. This court's own research has similarly found no such case.

Further, as the district court noted, there was virtually no evidence to support an instruction on heat-of-passion. The evidence showed that Williford and his wife had a stormy marriage, were separated, and were in the midst of divorce proceedings. After "drinking quite heavy" [sic], Williford went to his wife's home at some time after 1:00 a.m. on November 25, 1978 and asked to speak with his daughter, Wanda, who was staying there. Wanda, who had been asleep, was too tired to talk and went back to sleep on a couch in the living room. She testified that all was calm when she fell back asleep. She further testified that she awoke to the sound of gun shots and then went to the kitchen where Williford had fatally shot his wife. The only account of what transpired between the time that Wanda fell asleep and the shooting is Williford's own testimony.

He testified generally that he and his wife sat down in the kitchen to talk, that, although he did not yell at her, she yelled at him (but "not real loud"), and that she eventually pulled a gun from her purse and threatened him with it. The most specific details that Williford could remember were related in two short answers:

A. That's when she started using the profane language, calling me old, stupid and said she was getting married and said that she was going to marry her a young man soon and I said it does not matter to me what you do as long as you don't bother me. That's when she said, I am going to blow your brains out and by that time that's when she pulled the gun and we started tussling.

Q. What happened then?

A. Well, I don't know. I come to myself when I was standing in the door and Wanda was hitting me on the shoulders and ... was screaming....

Trial Tr. pp. 279–80.

■ On this evidence the Wisconsin Supreme Court found that failure to instruct the jury on heat-of-passion was not error. *State v. Williford*, 103 Wis.2d 98, 307 N.W.2d 277 (1981). Similarly, we find the evidence so scant that failure to instruct on heat-of-passion was not a fundamental miscarriage of justice amounting to a denial of due process.

## II.

We also reject Williford's claim that errors committed by his attorney were so serious as to deny him effective assistance of counsel. The reasoning and conclusions of the district court on this point were thorough and correct. *Williford v. Young*, 604 F.Supp. 1173, 1175–76 (E.D.Wis.1985). We specifically affirm and adopt that analysis and holding as our own.

## III.

Finally, we reject Williford's contention that the jury instruction given at trial on the defense of intoxication impermissibly shifted the burden of persuasion on the issue of state of mind to Williford. Although there is some confusion, the parties apparently agree that the instruction given at trial on the defense of intoxication was as follows:

The defense of intoxication is an issue in this case.

The Criminal Code of Wisconsin provides that an intoxicated condition is a defense if such condition negatives the existence of a state of mind essential to the crime.

Ordinarily, intoxication will not relieve a person from responsibility for his criminal acts. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if, at the time of the commission of the alleged criminal act, he was so intoxicated that he was unable to form the essential intent or have the essential mental state.

The "intoxicated or drugged condition" to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibitions or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. To be relieved from responsibility for criminal acts it is not enough for a defendant to establish that he was under the influence of intoxicating beverages. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite to the commission of the crime charged.

In this case, defendant is charged with the crime of first degree murder of which one of the essential elements is intent to kill. The defendant claims that, at the time of the alleged offense, his condition from the use of intoxicating liquor was such that he did not form such intent.

If the defendant, because of his condition, was incapable of forming and,

therefore, did not form the intent to kill, then you must not find him guilty of first degree murder as charged in the information.

If you have any reasonable doubt as to whether or not he was so intoxicated, you must give the defendant the benefit of that doubt and find him not guilty of first degree murder.

The parties also agree that the court gave the following general instruction on the presumption of innocence and the State's burden of proof.

The law presumes every person charged with the commission of an offense to be innocent. This presumption attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence.

The burden of proving the defendant guilty of every element of the crime charged (or submitted for your consideration) is upon the State. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.

If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find him not guilty.

The instructions given in this case are virtually indistinguishable from those approved in *Stewart v. Israel*, 738 F.2d 889 (7th Cir.1984). We only need consider whether the recent decision of the Supreme Court in *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) has modified the principles of law that guided our decision in *Stewart*.

In *Francis*, the court did not modify, but rather, reaffirmed the longstanding law related to the constitutionality of jury instructions "in a criminal prosecution in which intent is an element of the crime charged and ... the question is whether these instructions, when read in the context of the jury charge as a whole, violate the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt." *Francis*, —— U.S. ——, 105 S.Ct at 1968, 85 L.Ed.2d at 350. The prosecution bears the burden of proving beyond a reasonable doubt each fact essential for a conviction on the charged offense. *Francis*, —— U.S. at ——, 105 S.Ct. at 1970, 85 L.Ed.2d at 352; *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). The Due Process clause prevents any state from placing on the defense the burden of persuasion on any element or fact necessary for conviction. *Francis*, —— U.S. at ——, 105 S.Ct. at 1970, 85 L.Ed.2d at 352; *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1481, 44 L.Ed.2d 508 (1975). If a reasonable juror could have understood a particular jury instruction as shifting the burden of persuasion on an element of a crime to the defense, the accused has been denied due process of law. *Francis*, —— U.S. at ——, 105 S.Ct. at 1972, 85 L.Ed.2d at 354; *Sandstrom v. Montana*, 442 U.S. 510, 519, 99 S.Ct. 2450, 2457, 61 L.Ed.2d 39 (1979).

▇▇▇ Most importantly, the *Francis* court clarified the proper analysis for evaluating the effect of companion instructions on the constitutionality of a single challenged instruction. The challenged instruction must be viewed in light of all instructions given. *Francis*, —— U.S. at ——, 105 S.Ct. at 1972, 85 L.Ed.2d at 354. If the challenged instruction is ambiguous or unclear as to the proper allocation of the burden of persuasion, it may be clarified or rehabilitated by a proper instruction that either specifically clarifies the instruction or generally puts the burden properly on the State as to every element of the charge. *Francis*, —— U.S. at ——, 105 S.Ct. at 1972, 85 L.Ed.2d at 354. If the challenged instruction unambiguously places the burden of persuasion on the defense, however, it cannot be saved by a general instruction that the defendant is presumed innocent and that the State has the burden of proof as to all elements. *Francis*, —— U.S. at ——, 105 S.Ct. at 1973–74, 85 L.Ed.2d at 356–57. It also

cannot be saved by a specifically contradictory instruction. In that circumstance, the "reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Francis,* —— U.S. at ——, 105 S.Ct. at 1975, 85 L.Ed.2d at 358.

Applying this analysis, we find that the challenged instruction on intoxication, even if ambiguous when read alone, is adequately clear when read in context with all other instructions. Although this particular intoxication instruction is disapproved under Wisconsin law, *Barrera v. State,* 109 Wis.2d 324, 325 N.W.2d 722 (1982), and could certainly be clearer, no reasonable juror would interpret it as shifting the burden of persuasion on the element of intent to Williford.

■ Certainly the intoxication instruction could be dissected clause by clause or sentence by sentence and distorted into a completely erroneous and unconstitutional instruction. For example, if we treated the sentence, "He [the defendant] must establish that degree of intoxication that means he was utterly incapable of establishing the intent requisite to the commission of the crime charged," as if it were the only instruction given, the instruction would surely be faulty. The jury would not know whether the defendant had to show intoxication to raise a defense, to prove innocence, or to avoid a life-sentence. They would be wholly unaware of whether the defendant had the burden of production or persuasion. Fortunately, however, this sentence was not given in isolation. It was the last sentence of a paragraph that was clearly intended only to explain the state of "intoxicated or drugged condition." It was contained in the series of paragraphs that made up an intoxication instruction which clearly informed the jury from the start that intoxication is a defense and clearly informed the jury in closing that reasonable doubt as to Williford's intoxication would require a verdict of not guilty. Additionally, the court gave a general instruction that clearly and correctly put the burden of persuasion on the State as to all

elements and gave the defendant a presumption of innocence as to all elements. We read these various components as complimentary rather than contradictory. As such, they easily survive the *Francis* analysis.

## IV.

For the foregoing reasons the judgment of the district court denying Williford's petition for writ of habeas corpus is hereby

AFFIRMED.