831 F.2d 296
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Victor Hugo MARTIN, Petitioner-Appellant,
v.
Gene SCROGGY, Warden, Kentucky State Penitentiary; and
David Armstrong, Attorney General, Respondents-Appellees.
 No. 86-6212.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1987.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Petitioner, Victor Martin, appeals the district court's denial of his request for a writ of habeas corpus. Martin claims he is entitled to habeas relief because he was denied a fair trial when the trial court declined to instruct the jury on the insanity defense; and because he was denied a speedy trial by virtue of a 20-1/2-month delay before his trial occurred. We affirm the district court's denial of the writ.
 
 I.
 
 2
 On March 22, 1980, Martin and some friends started drinking early in the day. Late in the evening, Martin and a female companion went to the home of Thomas Evans, a handicapped man, and after pulling the wires out of Evans' telephone box, entered the home. Martin shot Evans to death. Martin and his companion then stole various personal items belonging to Evans.
 
 
 3
 The police arrested Martin on March 23, 1980. Following a trial which did not begin until September 3, 1981, a jury convicted Martin of murder and first-degree robbery.
 
 
 4
 Martin presented an insanity defense through the testimony of Dr. Ravani, a psychiatrist. Ravani testified that Martin had suffered from seizures, epilepsy, delirium tremens, and acute brain syndrome-a temporary reduction of brain function which causes some heavy drinkers, when intoxicated, to suffer an abnormal reaction to alcohol. The doctor opined that alcohol consumption caused Martin's acute brain syndrome. It was also his opinion that if Martin was extremely intoxicated at the time he murdered and robbed the victim, and if he then suffered from acute brain syndrome, Martin could have suffered an abnormal reaction to the alcohol and may have been unable to appreciate the criminality of his conduct. Ravani also testified, on cross-examination, that if Martin was not intoxicated, he would have been able to appreciate the wrongfulness of his conduct. The trial judge refused to charge the jury on the defense of insanity, instructing instead on the defense of intoxication.
 
 II.
 
 5
 Martin first alleges that his right to a fair trial was denied when the trial court refused to instruct the jury on the defense of insanity. Kentucky law provides that a defendant is entitled to an instruction on the insanity defense when the evidence can be construed to show that at the time the offense was committed, the defendant, as a result of mental disease or defect, lacked substantial capacity either to appreciate the criminality of his conduct or to conform to the requirements of law. Ky. Rev. Stat. Sec. 504.020.[1]
 
 
 6
 As we have indicated, the essence of Dr. Ravani's opinion testimony was that if Martin, at the time of assault upon his victim, was unable to appreciate the criminality of his conduct, it was because of brain syndrome, whose effects were triggered by the consumption of alcohol sufficient to cause drunkenness. Kentucky law provides the defense of intoxication where, because a defendant voluntarily drank alcohol, he or she became so intoxicated the defendant could not form the requisite intent to commit a specific intent crime. Ky. Rev. Stat. Sec. 501.080(a).[2]
 
 
 7
 There are two problems with Martin's proposed defense. First, even if Kentucky law provided that temporary insanity caused by one's abnormal reaction to alcohol due to an acute brain syndrome which exacerbated the effects of voluntary intoxication established an insanity defense, the evidence in this case is not sufficient to warrant such an instruction.
 
 
 8
 On appeal of Martin's conviction, the Kentucky Supreme Court found that the evidence did not entitle Martin to a temporary insanity instruction. Thus, the refusal by the trial judge to give the requested instruction was necessarily correct as a matter of state law. Pilon v. Bordenkircher, 593 F.2d 264, 267 n.4 (6th Cir. 1979).
 
 
 9
 We also find that it was not a violation of due process for the judge to refuse to give the requested instruction. Dr. Ravani testified at length concerning the effects of alcohol on the human brain, but testified very little about Martin's condition in 1980. Ravani did testify that hospital records from 1974 showed that Martin was then suffering from acute brain syndrome. However, as Ravani testified, acute brain syndrome is a temporary condition. The hospital records from 1975, 1976 and 1979 do not state that Martin suffered from acute brain syndrome. Furthermore, Dr. Ravani testified that when he examined Martin in 1981, Martin was not suffering from acute brain syndrome, and that he did not know what Martin's condition was at the time of the fatal assault upon Evans.
 
 
 10
 Furthermore, there was no evidence that Martin was so drunk at the time of the crime that he was unable to appreciate the criminality of his conduct. His companions testified that Martin had been drinking all day, but not that he was so drunk he did not know what he was doing. The principal testimony as to the extent of Martin's intoxication came from the police officers who arrested him several hours after the crime was committed. They testified that his speech was slurred, that he could not walk a straight line, and that he seemed disoriented. Other testimony concerning Martin's mental state showed that he remembered going to Evans' house, struggling with Evans, taking a gun from Evans' dresser, shooting him and stealing his property. This evidence strongly refutes Martin's claim that he was suffering from acute brain syndrome, which affects one's memory. In addition, Martin told his friends after the crime, but before the police knew of the murder, that he had murdered someone, thus indicating that he appreciated the criminality of his conduct.
 
 
 11
 Essentially, Martin's defense of acute brain syndrome was based on a hypothetical question propounded to Dr. Ravani, in which it was assumed that Martin suffered from acute brain syndrome and was extremely intoxicated at the time the crime occurred. There being no evidence that this was the case, the hypothetical question was insufficient evidence to necessitate an insanity instruction. Therefore, no due process violation took place.
 
 
 12
 A second problem with defendant's proposed instruction is that it is very unlikely that temporary insanity caused by an abnormal reaction to voluntary intoxication is a defense in Kentucky. Temporary insanity caused by involuntary intoxication, or caused by an abnormal reaction to alcohol consumed involuntarily, is a defense under Ky. Rev. Stat. Sec. 501.080(b). See also Teeters v. Commonwealth, 221 S.W.2d 85 (Ky. App. 1949). Also, a permanent insanity caused by a lifetime of drunkenness, resulting in delirium tremens, where one is insane while sober as well as when drunk, does give rise to the insanity defense. See Horn v. Commonwealth, 167 S.W.2d 58 (Ky. App. 1942). However, temporary insanity caused by voluntary drunkenness does not necessitate an insanity instruction. Patterson v. Commonwealth, 65 S.W.2d 75 (Ky. App. 1933). This is implicitly recognized in the Kentucky statutes by the fact that temporary insanity caused by involuntary intoxication, or by an abnormal reaction to alcohol involuntarily consumed, gives rise to an insanity defense under Ky. Rev. Stat. Sec. 501.080(b), while temporary insanity caused by voluntary intoxication only gives rise to the limited intoxication defense under Ky. Rev. Stat. Sec. 501.080(a). This state of the law is also supported by the bulk of case law from other jurisdictions. Springer v. Collins, 586 F.2d 329 (4th Cir. 1978), cert. denied, 440 U.S. 923 (1979); Kane v. United States, 399 F.2d 730 (9th Cir. 1968), cert. denied, 393 U.S. 1057 (1969); Evans v. State, 645 P.2d 155 (Alaska, 1982); People v. McCarthy, 167 Cal. Rptr. 772 (Cal. App. 1980); Parker v. State, 254 A.2d 381 (Md. Ct. Spec. App. 1969), cert. denied, 402 U.S. 984 (1971); Commonwealth v. Hicks, 396 A.2d 1183 (Penn. 1979); Cornwell v. State, 8 Tenn. 147 (1827); Craig v. State, 594 S.W.2d 91 (Tex. Crim. App. 1980). See also United States v. Henderson, 680 F.2d 659 (9th Cir. 1982). The only support for petitioner's proposed defense lies in a few words of dicta in Greider v. Duckworth, 701 F.2d 1228 (7th Cir. 1983), based on a quirk of Indiana law.
 
 
 13
 Because the evidence Martin submitted did not necessitate an insanity instruction under Kentucky law, he was not entitled to a habeas writ on that ground.
 
 III.
 
 14
 Martin next asserts the writ should issue because his right to a speedy trial was violated. The trial court granted seven continuances, resulting in a 20-1/2-month delav before trial. During that time, Martin was a pretrial detainee incarcerated by Kentucky officials.
 
 
 15
 Petitioner relies on Cain v. Smith, 686 F.2d 374 (6th Cir. 1982). Cain, involved an 11-1/2-month delay in a "simple robbery" case which took two days to try. The delay was solely the fault of the prosecution and was utilized by the prosecution to amass evidence against the defendant because the prosecution did not yet have a facie case. Cain determined that there was a possible violation of the petitioner's right to a speedy trial and remanded for a hearing on the issue.
 
 
 16
 The United States Supreme Court in Barker v. Wingo, 407 U.S. 514 (1972), established a four-step balancing test, identifying some of the factors courts "should assess in determining whether a particular defendant has been deprived of his right [to a speedy trial]." The four factors identified by the Supreme Court are: length of delay, reason for delay, defendant's assertion of his right to a speedy trial, and prejudice to the defendant.
 
 
 17
 In Barker, the Supreme Court found a five-year delay in a murder case necessitated balancing the remaining factors, but that such a delay was not sufficient in itself to find a violation of the right to a speedy trial. In this case, Martin is accused of robbery and first degree murder. Unlike the case in Cain, a simple robbery case, this was a murder case, more analogous to Barker. The delay in Martin's trial was but 20-1/2 months-one third the delay in Barker.
 
 
 18
 Next, as the district court fully explained, the reasons for the delays were, on the whole, innocuous. Indeed, some of the delay was attributable to defendant. The next factor is whether or not defendant asserted his right to a fair trial. There is no dispute that defendant did assert his right to a fair trial.
 
 
 19
 The final factor is prejudice to the defendant. The Supreme Court identified three interests of defendant which could result in prejudice: first, oppressive pretrial incarceration; second, anxiety and concern of the accused facing pending charges; and third, possible impairment of the presentation of the defense. The Supreme Court held the lattermost to be tbe most serious concern. Although Martin was subject to extensive pretrial incarceration, and the anxiety and concern of the accused facing charges, the delay resulted in no prejudice to Martin's presentation of his defense.
 
 
 20
 We do not find the delay so oppressive as to deny the defendant his right to a speedy trial. We therefore affirm the district court's dismissal of the habeas petition.
 
 IV.
 
 21
 Because Martin's constitutional rights were not violated, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Our review of state law instructional errors is very limited. See Henderson v. Kibbe, 431 U.S. 145 (1977); Love v. Young, 781 F.2d 1307 (7th Cir.), cert denied, 91 L. Ed. 2d 551 (1986); Miller v. Stagner, 768 F.2d 1090 (9th Cir. 1985), cert. denied, 89 L. Ed. 2d 577 (1986), amend, in 757 F.2d 988 (9th Cir. 1985); Williford v. Young, 779 F.2d 405 (7th Cir. 1985), cert. denied, 90 L. Ed. 2d 664 (1986). This circuit as been especially circumspect in granting only a limited review of alleged state law instructional errors. See Wood v. Marshall, 790 F.2d 548 (6th Cir.1986), cert. denied, 107 S.Ct. 889 (1987); Long v. Smith, 663 F.2d 18 (6th Cir. 1981), cert. denied, 455 U.S. 1024 (1982); Pilon v. Bordenkircher, 593 F.2d 264 (6th Cir.), vacated and remanded on other grounds, 444 U.S. 1 (1979)
 In any event, Martin's constitutional rights were in no way violated, and habeas relief therefore is unavailable if the requested instruction was not justified under state law by the evidence submitted, see Hopper v. Evans, 456 U.S. 605, 611-12 (1982); Ferrazza v. Mintzes, 735 F.2d 967, 968 (6th Cir. 1984); Brewer v. Overberg, 624 F.2d 51, 52-53 (6th Cir. 1980), cert. denied, 449 U.S. 1085 (1981).
 
 
 [2]
 Ky. Rev. Stat. Sec. 501.080(b) provides for an involuntary intoxication defense, where, if defendant involuntarily became intoxicated, or had an abnormal reaction to alcohol involuntarily consumed, and thereby became unable to appreciate the criminality of his conduct, defendant cannot be held responsible for the crime. Martin did not seek this instruction, and submitted no evidence showing his intoxication was involuntary